SCHMIDT v. THE STEAM-SHIP PENNSYLVANIA.*

*(Circuit Court, E. D. Pennsylvania. October 28, 1880.)*

1. LIBEL IN REM FOR REFUSAL OF MASTER TO DELIVER GOODS SHIPPED —STOPPAGE IN TRANSITU—RIGHTS OF INDORSEE OF BILL OF LADING. Where the master of a vessel refuses to deliver goods shipped under a bill deliverable to the order of the shipper, in consequence of directions received from the shipper to stop the goods, which stoppage is subsequently withdrawn by the shipper, the vessel is liable *in rem* to the holder for the value of the bill of lading indorsed by the shipper, for the damages sustained by a fall in value of the goods between the time of demand and the time of actual delivery.

2. SAME—MEASURE OF DAMAGES—LOSS OF SALE OF GOODS BY DELAY IN DELIVERY.—If, in consequence of the refusal to deliver, the holder of the bill of lading loses the benefit of a sale which he had made of the goods to arrive, and of which he had notified the master of the vessel at the time of demand, the measure of damages is the difference between the price at which such sale was made and the market price at the time of the actual delivery by the master.

3. SAME—DATE AT WHICH LOSS IS TO BE ESTIMATED—OFFER TO DELIVER—REFUSAL TO ACCEPT.—After libel filed, the notice from the shipper was withdrawn, and the master of the vessel offered to deliver the goods, and requested a discontinuance of the suit. The holder of the bill of lading replied that he would accept the goods at the then market price, if the vessel would pay the loss to that time. Subsequently the goods were delivered without prejudice. *Held,* that the measure of damage was the fall in value to the date of actual delivery, and not to the date of the offer to deliver.

In Admiralty. Appeal from decree of district court.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

This was a libel by Henry Schmidt, against the steam-ship Pennsylvania, for damages for refusal of the master to deliver 67 bales of goat skins shipped on board of said steamship from Liverpool to Philadelphia. The owners of the steam-ship filed an answer averring that the refusal to deliver was in consequence of a notice from the shipper to stop the goods in transit, and that as soon as this notice was withdrawn they had offered to deliver the goods.

The testimony disclosed the following facts: In November, 1877, Henry Schmidt, of Philadelphia, received a letter from Havemann & Polemann, of Paris, France, offering to sell him 10,000 Servian goat skins which they had purchased at Trieste, Austria. On November 27, 1877, Schmidt accepted this offer by cable, and on November 30th sold the skins to arrive to James S. Keene, of Philadelphia. On December 21, 1877, the agents of the American Steam-ship Company received the skins at Trieste from J. Bresch, to be transported to Liverpool, and from thence by one of the steamers of the American line to Philadelphia. They issued a bill of lading for the goods to Bresch in which no consignee was named, but the goods were deliverable to the order of the consignor. Bresch, on the same day, indorsed the bill of lading to Havemann & Polemann, who in turn, upon receiving the money for the skins, forwarded it to Schmidt. The skins arrived at Philadelphia on the steamship Pennsylvania on February 3, 1878. Before their arrival the agents of the steam-ship company received notice by cable from Bresch to stop the skins on account of insolvency of consignees, and to reship them to Liverpool. Upon the arrival of the steam-ship at Philadelphia, Schmidt presented the bill of lading, informed the master that he had sold the skins to arrive, and demanded delivery, which, in consequence of the notice from Bresch, was refused. On account of the failure to deliver, Keene canceled the contract of sale with Schmidt. On February 12, 1878, this libel was filed by Schmidt against the vessel. On February 19, 1878, the notice to stop the skins was withdrawn, and counsel for respondent then wrote to counsel for libellant offering to deliver the goods,

and requesting libellant to discontinue the suit and send bill of costs. The market price of skins having fallen, Schmidt refused to discontinue the suit unless the steam-ship company would pay to him the difference between the then market price of the skins and the price at which he had sold them to Keene, which difference amounted to $1,090.51, but offered to accept the goods at such market price if the steam-ship company would pay said difference. This the company refused to do, but afterwards, on March 5, 1878, by agreement in open court, the skins were delivered without prejudice, the court reserving the question of the liability of the vessel for damages.

It appeared from the testimony that owing to the failure in January, 1878, of a large dealer in skins the market at the time of the arrival of the steam-ship was unsettled; some of libellant's witnesses estimating the market value of the skins at that time to be as high as 27 cents per pound, and some of respondent's witnesses placing it as low as 20 cents. It clearly appeared, however, that during February, 1878, the price of skins fell, and that on March 5, 1878, when delivery was actually made, the market value, if there was a market, was but 20 to 22 cents per pound.

The libellant contended that the vessel was liable for the difference between the contract price with Keene and the market value on March 5, 1878. Respondents contended that as the master of the vessel had acted in good faith, in obedience to an order of stoppage *in transitu,* the vessel was not liable at all, and that even if any liability existed it could only be for the decline in market value between the arrival of the vessel and the offer to deliver the goods made February 19, 1878. The district court entered a decree in favor of libellant, *Cadwalader,* D. J., delivering the following opinion: "The detention of the skins by the defendants was wrongful. There could be no rightful stoppage *in transitu* by reason of the former owner's insolvency. Through this wrongful detention, and the consequent inability to deliver the goods to the purchaser in Philadelphia, the benefit of the sale to him was

lost.   He rejected the goods, as he had a right to do, and the market had fallen so that a loss, which is the measure of the damage, had been suffered."*

The district judge died before any assessment of damages was made, but as he had indicated during the argument that, in his opinion, the measure of damage should be the difference between the contract price with Keene and the market value on February 19, 1878, the date of the offer to deliver, the parties, by agreement, entered a *pro forma* assessment of damages at $1,090.51.   Both parties then appealed to the circuit court.

*E. G. Platt* and *Samuel Dickson*, for libellant.

*Morton P. Henry*, for respondent.

McKENNAN, C. J.   The opinion of the late district judge, who decided this cause, so concisely and accurately states the law by which it must be governed, that I do not propose to add anything to it.

The ordinary measure of damages between vendor and vendee, for breach of a contract for the sale of goods, is the difference between the contract price and the market price at the time and place of delivery, for the reason that this is the actual loss sustained by the vendee.   But here the respondent was in possession of the libellant's goods, which were wrongfully withheld from him, whereby he was disabled from performing a contract for the sale of them, and the sale of them was defeated.   Of this sale the respondent was duly notified, when a delivery of the goods was demanded, and by its refusal to deliver them took the risk of a renunciation of the purchase by the complainant's vendee.   Whatever sum the complainant would have realized by this contract in excess of the market price of the goods at the time of their delivery, when he had the power to dispose of them, is clearly the amount of his actual loss which was caused by the respondent's act. The goods were withheld from the complainant until the fifth of March, 1878, and for the difference between their market price at that time and the price for which they had been sold

*For a report of the case in full, with arguments of counsel, see 7 Weekly Notes, 98.

to Keene, he is entitled to a decree. This difference amounts to $1,961.57, for which sum, with interest from March 5, 1878, and costs, a decree will be entered in favor of the libellant.